UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | CV-S-03-1220-JLQ |
| ) | No. 2:98-CR-347-JLQ |
| Plaintiff, ) | |
| ) | MEMORANDUM OPINION |
| vs. ) | AND ORDER DENYING PETITION |
| ) | FOR WRIT OF HABEAS CORPUS; |
| RICARDO MURILLO, ) | CERTIFICATE OF APPEALABILITY |
| ) | |
| Defendant. ) | |

Oral argument on the Defendant's Petition For Writ of Habeas Corpus and/or Motion To Vacate filed pursuant to 28 U.S.C. § 2255 was held in Las Vegas, Nevada on May 8, 2007. Camille Damm, Assistant United States Attorney, appeared for the Government. Daniel J. Albregts, Esq., appointed by the court to represent the Defendant, appeared for the Petitioner, Ricardo Murillo.

**PROCEDURAL BACKGROUND**

The Defendant Murillo was convicted by a jury in 1999 of conspiracy to commit and the murder for hire of Patricia Margello in Las Vegas, Nevada, in 1998. The undersigned presided over the trial of this matter and imposed life sentences on each count of conviction. During the pre-trial, trial, and appellate proceedings, the Defendant was represented by the Federal Public Defender's District of Nevada office. Attorneys Arthur Allen and Shari Kaufman of that office represented the Defendant throughout the pre-trial and trial proceedings. Following the imposition of the life sentences, the Defendant appealed his convictions and sentences which were affirmed in *United States v. Murillo*, 288 F. 3d 1126 (9th Cir. 2002). The Defendant then filed a *pro se* Motion To Vacate claiming ineffective assistance of counsel at the trial of his case based upon the alleged failure of his attorneys to file a Notice of Alibi and call his alleged alibi witnesses at trial. The Defendant further claims that these alleged failures were the

ORDER - 1

Case 2:03-cv-01220-JLQ-PAL   Document 5   Filed 05/21/07   Page 2 of 9

reason he waived his right to testify at trial. Because of the issues involved and the sentences imposed the court appointed Daniel Albregts, an experienced and respected trial and criminal defense attorney, to represent the Defendant in this 28 U.S.C. § 2255 proceeding. The Defendant has been incarcerated at the United States Penitentiary at Leavenworth, Kansas. The court authorized Mr. Albregts to travel to Leavenworth to confer with the Defendant. Thereafter, Mr. Albregts filed an amended Habeas Corpus Petition.

By Order filed December 27, 2004 (C. R. 234), the court found that since the Defendant's Habeas Corpus Petition was based upon alleged ineffective assistance of counsel, the attorney-client privileges between Mr. Murillo and his trial counsel were waived. Pursuant to various Orders of the court, Mr. Albregts, representing the Defendant, and thereafter Ms. Damm, representing the Government, were given full access to the boxes of files in the Federal Defender's office containing the pretrial and trial materials accumulated by the Federal Defenders, Arthur Allen and Shari Kaufman, along with their investigators and staff members. At the direction of the court, affidavits from Mr. Allen and Ms. Kaufman were filed. The court authorized the taking of the depositions of Mr. Allen and Ms. Kaufman and that of Ed Heddy, the lead investigator, and those depositions have been reviewed and considered by the court in its ruling in this matter. The court by its Memorandum Opinion And Order Denying Motion For Evidentiary Hearing (C.R. 260) filed on September 26, 2006, held that an evidentiary hearing was not required for the reasons stated in that Order including the fact that the depositions of the defense attorneys and Mr. Heddy had been taken. After supplemental briefing by both sides, the court scheduled and heard oral argument on May 8, 2007.

## FACTUAL BACKGROUND

On or about August 2, 1998, Patricia Margello was killed by strangulation and the breaking of her neck in Room 6 of the Del Mar Motel on Las Vegas Boulevard in Las Vegas, Nevada. Her body was placed in taped plastic garbage sacks and inserted in the

ORDER - 2

air vent of the motel room. The Defendant was arrested and charged with the murder. Also arrested and charged were Diana Hironaga and Joseph Balignosa who admitted to police that they were present in the motel room when Ricardo Murillo strangled and killed Margello. Also charged with being a member of the conspiracy to the killing was Christopher Moseley who allegedly had promised to pay Hironaga and Murillo $25,000 for the killing. At Murillo's trial Hironaga and Moseley admitted their involvement and testified against the Defendant. While having confessed to a limited involvement in the killing, Balignosa was not available to testify at Murillo's trial as he had been charged with his involvement in state court. However, Mr. Murillo's defense team was in possession of a copy of Balignosa's confession which named Murillo as the killer. The factual background of the murder is further set forth in the Government's Response to 28 U.S.C. §2255 Motion To Vacate (C.R. 240), in the reported appellate decision at 288 F. 3d 1126, and in the trial transcript.

Upon the Defendant's arrest in August, 1998, the Federal Defenders of Nevada were appointed to represent him. Attorneys Arthur Allen and Shari Kaufman were assigned by that office to the case and two investigators, including Ed Heddy, were also assigned to the case, along with support staff, including a para-legal. Both of the attorneys, and the investigators had ongoing contact with the Defendant who was in custody. Because the applicable penal portion of the federal statute under which the Defendant was charged authorized the imposition of the death penalty if so determined by the jury, attorneys Allen and Kaufman, along with investigator Heddy and other staff members spent full-time on the case from the time of their appointment through the trial in November of 1999. The attorneys and investigators researched the materials and facts in an effort to convince the United States Department of Justice not to seek the death penalty. After a presentation and hearing with the appropriate Department of Justice officials in Washington, D. C. attorneys Allen and Kaufman were successful in convincing the D.O.J. not to seek the death penalty. They thereafter devoted their full-

ORDER - 3

time efforts to preparation for and trial of the matter in November, 1999.

The background and experience of attorneys Allen and Kaufman and Investigator Heddy are set forth in their depositions taken in this matter. Mr. Allen has been a criminal defense lawyer since 1982. At the time of the trial of this matter, Mr. Allen had represented defendants in over 100 jury trials. He had previously defended death penalty cases and was death penalty qualified. Ms. Kaufman had been an attorney in the Federal Defender's office for some ten years at the time of the trial of this matter. Prior to that employment, Ms. Kaufman had other criminal defense experience. At the time of the trial of this matter, Ms. Kaufman had represented defendants in over 30 jury trials. Ed Heddy, the lead investigator in the Las Vegas Federal Defender's office, had at the time of the trial of this matter, over 5 years of employment in that office. He had served some 14 years as a sergeant in the Carson County Sheriff's office followed by 8 years as an investigator in the Nevada State Defender's office.

In his conversations with the defense team, the Defendant made conflicting statements as to his whereabouts on the night of the murder of Patty Margello, however, he did admit that he was the person seen on the video tape at the Walgreens store shortly after the murder on August 2, 1998 buying the garbage bags in which Patty Margello's body was found. One of the Defendant's statements to the defense team was that he had purchased the garbage bags as the result of a telephone call from Diana Hironaga, but had only delivered them to the door of the motel room. The Defendant gave the names of four people to the defense team as possible alibi witnesses. Those names were Mary Perez; Rochelle Del Carmen; Rod Saprone, the Defendant's cousin; and Michelle Berry. Mary Perez and Rochelle Del Carmen were interviewed pre-trial and called as defense witnesses at trial as to the alleged presence of the Defendant at the Union Plaza Hotel and Casino in downtown Las Vegas on August 1 and 2, 1998.

The other two individuals, Michelle Berry and Rod Saprone, were interviewed by Investigator Ed Heddy, but were not called as witnesses at trial. Michelle Berry was

ORDER - 4

interviewed by Mr. Heddy on October 21, 1999, shortly prior to the November 9, 1999, commencement of trial. She informed Mr. Heddy that she knew nothing about the whereabouts of the Defendant on the evening in question. The defense team concluded that Ms. Berry would not be helpful as an alibi witness at all, but could be a possible witness that Diana Hironaga was "obsessed" with the Defendant Ricardo Murillo. Following the Defendant's conviction, the defense files were turned over to a private attorney retained by the Defendant's family for sentencing and appellate purposes. During this time, Michelle Berry apparently wrote a post-conviction letter stating that following the Defendant's conviction she recalled that in fact the Defendant had been with her from 3 a.m. of August 2, 1998 until the later hours of that morning. Obviously, such a post-trial claim was not available to the trial defense attorneys as Ms. Berry had previously given their investigator a statement that she had no information as to the Defendant's whereabouts on that evening.

The second uncalled witness was Rod Saprone. Mr. Saprone was interviewed twice by Ed Heddy, the defense investigator. In the first interview and statement Saprone told Heddy that he, Saprone, was not at the Union Plaza with the Defendant on the night in question because he had been terminated from employment at the Plaza and did not wish to return there. Saprone informed Heddy that in fact he was at the Stratosphere lounge with Murillo and Joseph Balignosa on the night in question at midnight. A second interview of Saprone took place at his request on October 28, 1999, some two weeks prior to the commencement of the trial. In this second interview Saprone stated that in fact he was at the Union Plaza with Murillo and Balignosa at around midnight of August 1-2, 1998. Murillo had previously stated that such was the case since it was Saprone's birthday, which was contrary to Saprone's true birthday many months prior thereto. In view of these contradictory statements and their impeachment use, the defense team determined not to call Saprone because of the possible adverse reaction by the jury to such conflicting testimony.

ORDER - 5

The testimony of Diana Hironaga concerning the murder of Patty Margello was critical in the trial since she was the only testifying eye-witness thereto, although the car jumper cables found wrapped around Ms. Margello's body were claimed to be from Murillo's car and a towel found in his car matched those from the Del Mar Motel. The Government also introduced testimony and documentary evidence that Murillo and Diana Hironaga flew round-trip from Las Vegas to Philadelphia shortly after the murder to collect the cash delivered by Mr. Moseley's chauffeur to them at the Philadelphia airport for the killing of Patty Margello. The testimony of Diana Hironaga and the other evidence admitted established that the murder took place at approximately 3 a.m. on August 2, 1998. Ms. Hironaga also testified that she was with the Defendant Murillo, Balignosa, and Patty Margello earlier that evening. The defense team and attorneys Allen and Kaufman therefore determined that while the testimony of the witnesses Perez and Del Carmen did not constitute an alibi as to the location of the Defendant at 3 a.m., that testimony did differ from that of Diana Hironaga as to the location of the Defendant prior thereto. The attorneys therefore did not file a F. R. Crim. P. 12.1 alibi Notice, but utilized the Union Plaza witnesses testimony to challenge the credibility of Ms. Hironaga in her testimony as to the location of the Defendant earlier in the evening, suggesting to the jury that therefor the rest of Ms. Hironaga's testimony should not be believed.

The testimony of Mary Perez that she saw the Defendant at the Union Plaza around "3ish" on August 2, 1998, was somewhat uncertain as to date and time and had not been presented as such by Ms. Perez in her pre-trial statement to the defense team. Ms. Perez's "3ish" testimony, (at Volume VI of the trial transcript commencing at page 130), caused both the prosecution and the court to raise the issue of the lack of an alibi Notice. Ms. Kaufman and Mr. Allen explained that they were not offering the testimony as an alibi, but rather to impeach and challenge the credibility of the testimony of Ms. Hironaga as to where the Defendant was earlier in the evening. The court denied the motion of the

ORDER - 6

Government to strike the testimony of the Union Plaza witnesses, but precluded the defense from arguing that the Defendant could not have been at the murder scene because he was at the Union Plaza at the time of the murder. In accordance with their trial strategy, counsel for the Defendant argued to the jury that the testimony of Ms. Hironaga had been impeached and was not credible as a result of the testimony of the Union Plaza witnesses as to the location of the Defendant earlier in the evening before the murder and therefore her testimony should not be the basis for the Defendant's conviction.

## **ANALYSIS**

The landmark case where a Defendant claims that he has not been afforded his Sixth Amendment right to "counsel" and the effective assistance thereof, is *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* and its progeny establish that there are two prongs for analysis in cases such as this. The first prong is the performance prong. The analysis of the first prong does not allow the court to second guess the strategic or tactical decisions of counsel. The decisions of counsel as to the conduct of a trial are entitled to great deference. Counsel must be allowed a wide range in making decisions as to trial strategy and/or tactics. The evaluation of counsel's performance must be based on counsel's perspective at the time of trial. The courts of this Circuit have "repeatedly refused to second-guess counsel's strategic decisions to present or forego a particular theory of defense when such decision was reasonable under the circumstances." *United States v. Layton*, 855 F. 2d 1388, 1420 (9th Cir. 1988), citing *Strickland* @ 688. See also *United States v. Chambers*, 918 F. 2d 1455, 1461 (9th Cir. 1990).

In this case it is undisputed that the two attorneys and their investigators, representing the Defendant full-time for over one year, interviewed and determined that none of the four "alibi" witnesses furnished by the Defendant could, in fact, establish an alibi that would lead a jury to reasonably conclude that the Defendant could not have committed the murder of Patty Margello because he was at the Union Plaza at the time. The attorneys, recognizing that the only murder eye-witness who would testify was Diana

ORDER - 7

Hironaga, reasonably adopted a trial strategy of attacking the credibility of Ms. Hironaga, including her testimony that the Defendant was with her and Ms. Margello earlier in the evening, at a time that the Union Plaza witnesses had the Defendant at the Union Plaza. This was a reasonable trial strategy tactic and decision. Throughout the trial of this matter, presided over by the undersigned, Mr. Allen and Ms. Kaufman diligently, professionally, and thoroughly challenged each of the Government witnesses, particularly Ms. Hironaga and Mr. Moseley, whose testimony was, along with the forensic evidence, the key to the Government's case. The Defendant certainly received the assistance of able, informed, and competent counsel and investigators. The Defendant has failed to establish that his attorneys' conduct transgressed the "wide range of professionally competent assistance," *Strickland,* supra, @ 688, based upon those attorneys' informed and reasonable strategic decisions made " upon counsel's professional assessment of the facts and circumstances of the case." *Layton*, supra, @ 1420.

  Even if this court had determined that counsels' performance did not meet the first performance prong, a determination which this court has clearly not made, the court would further hold that based upon the testimony and evidence presented in the trial of this matter, there is no reasonable probability that the jury verdict would have been different had counsel determined to defend the case on the basis of an alleged alibi. *United States v. Thomas*, 417 F. 3d 1053, 1056 (9th Cir. 2005). The testimony of the two Union Plaza witnesses, Perez and Del Carmen, found at pages 130 and 134 of Volume VI of the trial transcript, did not cover the time of the murder of Patty Margello. Adding the testimony of the Defendant's cousin, Rod Saprone, with his completely contrary prior statement that he was not at the Union Plaza, would not have changed the result in this matter. Michelle Berry had unequivocally set forth in her statement to the defense investigator that she had no knowledge as to the location of the Defendant on the night in question. Her post-conviction statement does not change that fact. There is no "reasonable probability . . . sufficient to undermine confidence in the outcome."

ORDER - 8

*Strickland*, supra, @ 694; *Thomas*, supra, @ 1056.

Finally, the Defendant contends that because his attorneys did not present an "alibi" defense, that decision somehow caused him not to testify in his own defense. That blanket claim, without more, is a *non-sequitur*. The only possible credible "alibi" witnesses as to the Defendant's location during the evening in question, Mary Perez and Rochelle Del Carmen, were called by the defense attorneys, and the Defendant's decision not to testify was clearly a knowledgeable and voluntary one as his responses to the court's questions prior to the defense resting show at Volume VII, pages 4-5 of the trial transcript.

Based upon the foregoing and the court's May 8, 2007 rulings, IT IS HEREBY ORDERED that the Motion To Vacate construed as a Petition For Writ of Habeas Corpus, must be and is Denied.

## CERTIFICATE OF APPEALABILITY

Upon the oral ruling of this court on May 8, 2007, denying the Motion To Vacate, Mr. Albregts, appointed counsel for the Defendant, informed the court that he would remain as counsel for the Defendant on appeal and requested this court to issue a Certificate of Appealability pursuant to 28 U.S.C. § 2253(c)(1)-(3). While the court has denied the Defendant's Motion, the Defendant has made a showing, based on his allegations, of a denial of a constitutional right, that being the right to the effective assistance of counsel at trial.

The Clerk of this court shall enter this Order, enter judgment denying the Motion To Vacate and the Petition For Writ of Habeas Corpus, forward copies to counsel, and close this file, subject to any appeal taken herefrom. The Clerk of this court shall also close file CV-S-03-1220-JLQ

**DATED** this 21st day of May 2007.

s/ Justin L. Quackenbush
JUSTIN L. QUACKENBUSH
SENIOR UNITED STATES DISTRICT JUDGE

ORDER - 9